UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMARU ENTERTAINMENT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-2677-B |
| | § | |
| RONALD BRENT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ronald Brent's Motion for Leave to Amend Answer and Join Counterclaim Plaintiffs (Doc. 54). Because the Court finds the requirements for joinder and leave to amend are met, the Motion is **GRANTED.**

### I.

### BACKGROUND

The parties' dispute surrounds a painting used as an album cover ("the Painting") for the late rapper, Tupac Shakur.[1] This dispute, however, has largely taken place along two parallel litigation tracks. On one track, Ronald Brent and Zelus Group, LLC ("Zelus") filed suit against Amaru Entertainment, Inc. ("Amaru") in the Northern District of Texas on June 13, 2022 (the "First Suit"). Complaint, Brent v. Amaru Ent., Inc., No. 3:22-CV-1281-B (N.D. Tex. June 13, 2022), ECF 1. Brent and Zelus also added Leslie Ware as a plaintiff in their First Amended Complaint. First Amended Complaint, Brent v. Amaru Ent. Inc., No. 3:22-CV-1281-B (N.D. Tex. Oct. 6, 2022), ECF 24. In that complaint, Brent sought a declaratory judgment regarding

---

[1] The factual background of this case is laid out in detail in this Court's prior order in a parallel case concerning essentially the same dispute. *See Brent v. Amaru Ent., Inc.*, 2023 WL 2169906, at *1–2 (N.D. Tex. Feb. 22, 2023) (Boyle, J.).

his ownership of the Painting's copyrights. *See id.* ¶¶ 29–34. The plaintiffs also sought a declaratory judgment that Ware was the sole owner of the Painting, Amaru lacked an ownership interest in the Painting, and Brent and Zelus were within their legal rights to sell the Painting. *Id.* ¶¶ 35–40. Ultimately, however, the Court dismissed their complaint for lack of personal jurisdiction over Amaru. *Brent v. Amaru Ent., Inc.*, 2023 WL 2169906, at *5 (N.D. Tex. Feb. 22, 2023) (Boyle, J.).

The second track is the case currently before the Court (the "Second Suit"). Amaru originally filed this case in California state court on June 15, 2022, two days after Brent and Zelus's original complaint. *See* Doc. 1-1, Ex. A. The suit was then removed to the Central District of California and ultimately transferred to this Court in November 2022. Doc. 1, Notice Removal; Doc. 35, Order Mot. Transfer. When transferred, Amaru's complaint had claims against Heritage Capital Corporation ("Heritage"), Zelus, and Brent. *See* Doc. 12, First Am. Compl. Amaru had also previously requested leave to add Ware as a defendant prior to the transfer. *See* Doc. 27, Pl.'s Opp. Transfer, 8–9. Amaru's claims were for (1) conversion of the Painting against all defendants, (2) claim and delivery for return of the Painting against Zelus and Heritage, (3) injunctive relief against Zelus and Heritage to prevent the sale of the Painting, (4) declaratory judgment as to the Painting's proper ownership against Zelus and Heritage, and (5) declaratory judgment against Brent for the Painting's copyrights. *See* Doc. 12, First Am. Compl., ¶¶ 30–46. In January 2023, however, Amaru filed its Second Amended Complaint, which dropped all claims except for the declaration of copyright ownership claim against Brent. *See* Doc. 46, Second Am. Compl., ¶¶ 20–22.

Brent now moves to amend his answer in the Second Suit to essentially add the claims and parties from the First Suit. *See* Doc. 54, Mot. Leave Amend, 2 n.1. Specifically, Brent moves

to add two counterclaims and join Zelus and Ware as counterplaintiffs. *See* Doc. 54, Mot. Leave Amend. The first proposed counterclaim seeks declaratory judgment that Brent is the owner of the copyright in the Painting. Doc. 54-2, Ex. 2. The second proposed counterclaim seeks declaratory judgment that Ware is the sole owner of the Painting, Amaru lacks an ownership interest in the Painting, and Brent and Zelus were within their legal rights to sell the Painting. *Id.*

Amaru opposes Brent's Motion for Leave to Amend only as to the second counterclaim and the addition of Zelus and Ware as counterplaintiffs. Doc. 56, Resp., 4. Amaru argues Brent is improperly circumventing the requirements for intervening parties and expanding the scope of the litigation. *Id.* at 6–7. Amaru also contends that the counterclaims fail to properly allege subject-matter or personal jurisdiction. *Id.* at 8–9.

The Court addresses Amaru's arguments only to the extent they impact Brent's motion to add counterclaims and join counterplaintiffs. If Amaru wishes to raise other arguments pertaining to, for example, the Court's personal jurisdiction, it may do so in a responsive pleading. *See* Fed. R. Civ. P. 12(b). Because the Court finds that Brent has shown joinder and amendment are proper, the Motion for Leave to Amend is **GRANTED.**

## II.

## LEGAL STANDARD

A.   *Joinder of Counterclaims and Counterplaintiffs*

Federal Rule of Civil Procedure 13 governs counterclaims. While a party generally may assert a counterclaim, Rule 13 recognizes both "compulsory" and "permissive" counterclaims. Fed. R. Civ. P. 13(a)–(b). A counterclaim is "compulsory" if it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). A

"permissive" counterclaim is any claim against an opposing party that is not compulsory. Fed. R. Civ. P. 13(b).

Rule 13(h) indicates that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim." Fed. R. Civ. P. 13(h). Under Rule 20's provisions on permissive joinder, persons may be joined as plaintiffs if (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

B.   *Leave to Amend*

If the requirements for adding counterclaims and counterplaintiffs are met, the Court's decision to allow the amended pleading is then governed by Rule 15(a). *See Accresa Health LLC v. Hint Health Inc.*, 2019 WL 10960486, at *5 (E.D. Tex. May 23, 2019). Federal Rule of Civil Procedure 15(a)(2) directs the Court to "freely give leave [to amend] when justice so requires." The language of Rule 15(a) "evinces a bias in favor of granting leave to amend," and the Court must have a "substantial reason" for denying such a request. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). In exercising its discretion, the Court considers factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

## III.

## ANALYSIS

A.   *Joinder of Brent's Counterclaim Regarding Sale of the Painting Is Proper*

Amaru does not contest the permissibility of Brent's first counterclaim for declaratory judgment as to the Painting's copyrights. Doc. 56, Resp., 4. The Court's focus is instead on Brent's second counterclaim for a declaratory judgment that he was within his rights to sell the Painting. *See id.* Amaru essentially makes two arguments regarding Brent's counterclaim. Amaru first argues that Brent's declaratory judgment claim is not based on an "actual controversy" and instead "turn[s] an effort to intervene into a motion for permissive joinder." *Id.* at 5, 7–8. Amaru also asserts that the Court lacks subject-matter jurisdiction over Brent's claim because it is a permissive counterclaim based on state law. *Id.* at 8–9. The Court addresses the arguments in turn. It finds that Brent has an actual controversy regarding his actions in selling the Painting. The Court also finds it has subject-matter jurisdiction over the claim because it is a compulsory counterclaim subject to supplemental jurisdiction.

The Federal Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). However, a court may not issue a declaratory judgment unless there is "a case of actual controversy within [the court's] jurisdiction." *See id.* An actual controversy exists "where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (internal quotation omitted). "[A] 'specific and concrete' threat of litigation can establish a justiciable controversy." *RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 824 (W.D. Tex. 2020) (quoting *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 924 (5th Cir. 2017)).

Here, an actual controversy exists as to the physical ownership in the Painting. Amaru originally filed claims against Brent (and Zelus and Heritage) for conversion of the physical Painting. *See* Doc. 12, First Am. Compl., ¶¶ 30–34. The claim, however, was never dismissed with prejudice; Amaru merely amended its complaint to omit this claim. *See* Doc. 46, Second Am. Compl. A threat of litigation regarding the physical ownership of the Painting is therefore not hypothetical, but rather exists in filed form on the docket. Neither Brent nor the Court must take Amaru at its word that the only remaining controversy in this action is the determination of the Painting's copyrights. Rather, Brent is well within his rights to seek finality regarding Amaru's claims in this matter, and the Court therefore finds that an "actual controversy" exists for purposes of the Declaratory Judgment Act.

The Court next addresses whether it has subject-matter jurisdiction over Brent's counterclaim. The classification of Brent's counterclaim as compulsory or permissive matters for subject-matter jurisdiction. Permissive counterclaims must have an independent basis for the Court's subject-matter jurisdiction, while compulsory counterclaims fall within its supplemental jurisdiction. *See Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1359 (5th Cir. 1979); *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714 (5th Cir. 1970). In determining whether a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and is therefore compulsory, the Fifth Circuit applies the "logical relation test." *Plant*, 598 F.2d at 1361 (internal quotation omitted). The logical relation test looks to the "aggregate of operative facts" and asks whether those facts "serve as the basis for both claims" or "activate[] additional legal rights, otherwise dormant, in the defendant." *Id.* (citing *Revere Copper*, 426 F.2d at 715). The test is a "loose standard which

permits 'a broad realistic interpretation in the interest of avoiding a multiplicity of suits.'" *Id.* (citing 3 Moore's Federal Practice ¶ 13.13 at 300).

In *Plant*, for example, the plaintiff-borrower filed a truth-in-lending claim against the lender. *Id.* at 1359. The issue on appeal was whether the lender's counterclaim for payment on the unpaid note balance was compulsory and thus within the court's supplemental jurisdiction. *Id.* Applying the logical relation test, the Fifth Circuit held that a "single aggregate of operative facts, the loan transaction, gave rise to both plaintiff's and defendant's claims," and there was an "obvious interrelationship of the claims and rights of the parties." *Id.* at 1361, 1364.

Here, the Court finds that Brent's counterclaim is compulsory and therefore subject to the Court's supplemental jurisdiction under 28 U.S.C. § 1367. At root, Brent's claim pertains to the same the dispute as Amaru's, namely, the rights of the respective parties in the Painting. Brent and Amaru are merely asserting rights to different sticks within the Painting's property bundle. And the aggregate of operative facts underlying both disputes is the creation and distribution of rights in the Painting. Both Amaru and Brent's claims raise issues such as Brent's creation of the Painting, his status of employment at Death Row Records, and the parties' subsequent understanding and representations of ownership. *Compare, e.g.*, Doc. 46, Second Am. Compl., ¶¶ 12–14, *with* Doc. 54-2, Ex. 2, ¶¶ 11–12. Although Amaru argues copyrights and physical ownership are different, *see* Doc. 54, Resp., 7, the logical relation test counsels against a multiplicity of suits grounded in such formality, *see Plant*, 598 F.2d at 1361. Accordingly, the Court finds that Brent's counterclaim is compulsory, and therefore this Court has supplemental subject-matter jurisdiction over his claim under 28 U.S.C. § 1367. *See Plant*, 598 F.2d at 1359.

B.   *Joinder of Counterplaintiffs Zelus and Ware Is Proper*

With Brent's second counterclaim properly before the Court, the Court next addresses party joinder under Rule 20. *See* Fed. R. Civ. P. 13(h). Under the two-prong test articulated in Rule 20, plaintiffs may be joined when (1) their claims "arise out of the same transaction, occurrence, or series of transactions or occurrences" and (2) there is at least one "common question of law or fact common to the plaintiffs" that will arise in the action. Fed. R. Civ. P. 20; *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (describing the two-prong test in dicta). Given the overlap in language, similar considerations to Rule 13's "transaction or occurrence" test may also animate Rule 20's application, though the Fifth Circuit has not directly adopted the same test. *See* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1653 (3d ed. 2023) (noting the approach taken by many courts is "reminiscent of the logical-relationship test"); *Accresa Health*, 2019 WL 10960486, at *8 (collecting cases and ultimately applying the "logical relationship" test in the context of Rule 20).

Brent, Zelus, and Ware all seek a declaratory judgment regarding the same "series of transactions or occurrences": the Painting's chain of ownership and their legal rights in the sale and/or ownership of that Painting. *See* Fed. R. Civ. P. 20(a)(1)(A). Permitting joinder of Zelus and Ware thus avoids a multiplicity of suits by settling once and for all the Painting's chain of ownership. *See Plant*, 598 F.2d at 1361 (discussing Rule 13(a)'s goal of "avoiding a multiplicity of suits"). And common questions of law and fact exist between all counterplaintiffs in the action, such as Brent's initial ownership status and rights in the Painting. *See* Fed. R. Civ. P. 20(a)(1)(B); Doc. 54-2, Ex. A, ¶¶ 32–37. The Court therefore finds that the requirements of Rule 20 are met.

Further, Zelus and Ware, like Brent, were subject to Amaru's threats of litigation and therefore satisfy the requirement of an "actual controversy" under the Declaratory Judgment Act. *See Shields*, 289 F.3d at 835. Amaru previously sued Zelus for conversion, claim and delivery, injunctive relief, and declaratory judgment as to ownership in the physical Painting. *See* Doc. 12, First Am. Compl., ¶¶ 30–43. And although Amaru never formally named Ware in its complaint, it sought leave to add Ware as a defendant prior to transfer of the case. *See* Doc. 27, Pl.'s Opp. Transfer, 8–9. The Court finds these actions amount to "a specific and concrete threat of litigation" sufficient for a justiciable controversy. *See RLI Ins. Co.*, 581 F. Supp. 3d at 824 (internal quotation omitted). Accordingly, Zelus and Ware may be properly joined as counterplaintiffs in this action.

C.   *The Standards of Rule 15(a) Are Met*

Having found joinder proper as to Brent's claim and the counterplaintiffs, the Court next considers whether amendment would nonetheless be improper under Rule 15(a). Amaru raises few arguments regarding the propriety of amendment *per se*. *See* Doc. 56, Resp. Indeed, the Court finds that permitting Brent's amendment is consistent with Rule 15(a)'s liberal standards for leave to amend. *See Smith*, 393 F.3d at 595. Brent filed his Motion for Leave to Amend on March 14, 2022, before the deadline in the scheduling order for leave to join parties or amend pleadings. *See* Doc. 51, Scheduling Order, 1. And this case is in its early stages; discovery only recently began and does not end until August 14, 2023. *See id.* Moreover, Brent did not delay in seeking leave to amend. Rather, Brent filed the present Motion within three weeks of the Court's order dismissing Brent, Zelus, and Ware's claims in the First Suit. *See Brent*, 2023 WL 2169906; Doc. 54, Mot. Leave to Amend. Accordingly, amendment is proper.

## IV.

## CONCLUSION

In conclusion, the Court finds that the joinder of Brent's counterclaim and Zelus and Ware as counterplaintiffs is proper. The Court further finds that allowing Brent's amendment comports with Rule 15(a). Accordingly, the Court **GRANTS** Defendant Ronald Brent's Motion for Leave to Amend Answer and Join Counterclaim Plaintiffs (Doc. 54) and **DIRECTS** the Clerk of Court to file the Amended Answer and Counterclaims (Doc. 54-1) on the docket.

**SO ORDERED.**

**SIGNED: May 18, 2023.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE